ROGER J. BROTHERS, SBN 118622
rbrothers@brotherssmithlaw.com
HORACE W. GREEN, SBN 115699
hgreen@brotherssmithlaw.com
BROTHERS SMITH LLP
2033 N. Main Street, Suite 720
Walnut Creek, California 94596
Telephone: 925 944 9799
Facsimile: 925 944 9701

Attorneys for Plaintiff
H&H INSURANCE SERVICES, INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| H&H INSURANCE SERVICES, INC.,<br><br>Plaintiff,<br><br>v.<br><br>ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY,<br><br>Defendant. | Case No. 5:20-cv-07655-EJD<br><br>**PLAINTIFF'S REPLY MEMORANDUM IN SUPPORT OF MOTION FOR PARTIAL SUMMARY JUDGMENT AND OPPOSITION TO CROSS MOTION FOR SUMMARY JUDGMENT**<br><br>Hearing Date: August 5, 2021<br>Time: 9:00 a.m.<br>Ctrm.: 4<br><br>**The Honorable Edward J. Davila** |

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

## TABLE OF CONTENTS

Page

1. Defendant Fails To Address the Nature and Scope of Defendant's Obligation ..... 1
2. Plaintiff Was Sued In The Performance of "Professional Services" ..... 1
3. Endurance's Rationale For Denial Of Coverage Is Not Supported ..... 3
4. The Exclusions Cited By Endurance Do Not Preclude Coverage ..... 5
5. California Law Does Not Preclude Coverage ..... 7
    A. Insurance Code Section 533 ..... 7
    B. Breach of Contractual Obligation to Pay Debt ..... 8
    C. Restitution/Disgorgement ..... 9
6. Defendant May Be Liable for "Bad Faith" Denial ..... 9
CONCLUSION ..... 11

## TABLE OF AUTHORITIES


**Page**

**CASES**

*American International Bank v. Fidelity and Deposit Co.* (1996) 49 Cal.App.4th 1558 ... 10

*Anthem Electronics, Inc. v. Pacific Employers Ins. Co.* 302 F.3d 1049 ... 10

*August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.* (2007) 146 Cal.App.4th 565 ... 8

*B&E Convalescent Center v. State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78 ... 7

*Bank of California v. Opie* 663 F.2d. 977 (9th Cir. 1981) ... 3

*Bennett v. U.S. Liability Ins. Group* 2014 U.S. Dist. LEXIS 57873 (D.Or.2014) ... 5

*Blumberg v. Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286 ... 3

*Caitlin Specialty Ins. Co. v. Camico Mutual Ins. Co.* 896 F.Supp.2d 808 ... 8

*California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1 ... 10

*California Union Ins. Co. v. Club Aquarius* (1980) 113 Cal.App.3d 243 ... 4

*Chateau Chamberay Homeowners' Association v. Associated International Ins. Co.* (2001) 90 Cal.App.4th 335 ... 10

*Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388 ... 4

*Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478 ... 7

*Farmers Ins. Exch. v. Knopp* (1996) 50 Cal.App.4th 1415 ... 4

*Geddes v. Tri-State Ins. Co.* (1968) 264 Cal.App.2d 181 ... 5

*Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263 ... 7






BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

**TABLE OF AUTHORITIES**
**(continued)**

**Page**

*Lira v. Chicago Ins. Co.*
1992 U.S. App. LEXIS 15474 (9th Cir. 1992)(unpub.) .......... 3, 4

*Paulfrey v. Blue Chip Stamps*
(1983) 150 Cal.App.3d 187 .......... 10

*State Farm Fire & Cas. Co. v. Wier*
(2012) 2012 Cal.App.Unpub. LEXIS 7842 .......... 4

*State Farm General Ins. Co. v. Mintarsih*
(2009) 175 Cal.App.4th 274 .......... 7

*Stem, Inc. v. Scottsdale Ins. Co.*
2020 U.S. Dist. LEXIS 127486, *22-23 (N.D. CAL July 20, 2020) .......... 10

*Ulrich v. State Farm Fire & Casualty Ins. Co.*
(2003) 109 Cal.App.4th 598 .......... 8

*Van Ness & Sperry, Inc. v. National Union Fire Ins. Co.*
1992 U.S. App. LEXIS 30574 (9th Cir. 1992) (unpub.) .......... 5

*Vandenberg v. Superior Court*
(1999) 21 Cal.4th 815 .......... 9

*Wilson v. 21st Century Ins. Co.*
(2007) 42 Cal.4th 713 .......... 10

**STATUTES**

Insurance Code section 533 .......... 7

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Defendant's Opposition Brief makes clear that there are no disputed material facts in this case. Defendant bases its arguments on a misread of the allegation of the underlying Complaint. For the reasons set forth below, Plaintiff is entitled to coverage as a matter of law.

**1. Defendant Fails To Address the Nature and Scope of Defendant's Obligation**

To begin with, Defendant's Opposition Brief fails to address the nature and scope of the insurer's obligation. Under California law, an insurer's duty to *defend* is broader than its duty to *indemnify*. *Gray v Zurich Ins. Co.* (1966) 65 Cal.2d 263. A liability insurer owes a duty to defend its insured when the claim creates *any potential* for indemnity. *Horace Mann Ins. Co. v. Barbara B.* (1993) 4 Cal.4th 1076, 1081. If the facts alleged by the third party or known to the insurer create any potential for indemnity under the policy, the insurer must provide a defense even though noncovered acts are also alleged by the third party action. *Id.* at 1084. Importantly, "[a]ny doubt as to whether the facts establish the existence of the defense duty **must be resolved in the insured's favor.**" *Montrose Chemical Corp. v. Superior Court* (1993) 6 Cal.4th 287, 299-300 (emphasis added).

**2. Plaintiff Was Sued In The Performance of "Professional Services"**

As Plaintiff pointed out in its Memorandum of Points and Authorities, the Acrisure Complaint arises out of the duties and obligations agreed to by the parties to the Co-Broker Agreement. The language of the Agreement makes clear that the parties are "engaged in the business of providing insurance and/or surety bond brokerage and related products and services" and had the "desire to cooperate to place insurance and/or surety bond business of their respective clients . . ." (Ex. 1 to Hoffner Dec., page one). As such, the terms of the Agreement that follow make it clear that H&H's performance of its duties as alleged in the underlying Complaint constituted "professional services" as the Policy defines that term, i.e., providing services as an insurance broker, including claims administration and management, for its clients. In performing those services, H&H was not alleged to have acted as an employee of Acrisure, but at all times was an independent contractor. H&H was engaged in "insurance services" as the Policy defines that term.

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Moreover, all of the acts allegedly committed by Plaintiff involved Plaintiff's professional services, i.e., the marketing, sale, and servicing of insurance products. Specifically, the underlying complaint alleged that Plaintiff "began diverting [Acrisure's] [insurance] customers' business and engaging [Acrisure's] employees to perform [insurance] services for them . . ." (Complaint ¶ 29). The complaint further alleged that, in the course of servicing insurance clients, Plaintiff "did not compensate [Acrisure] for this [insurance] business by sharing profits" (Complaint ¶ 30). The complaint further alleged that Plaintiff "wrongfully compete[d] with [Acrisure]" (Complaint ¶ 36). All of these alleged actions involved Plaintiff's professional services. Conversely, Defendant's Opposition Brief fails to identify any acts allegedly committed by Plaintiff during the performance of personal or non-professional services. Specifically, Defendant's assertion that the alleged breach of a brokerage agreement by an insured whose professional services are that of an insurance broker is "do not arise out of the special risks inherent in the practice of the profession" makes no sense. If a Professional Liability policy does not apply to alleged wrongful acts that an insured commits in the course of performing its professional services (i.e., being an insurance broker), then the coverage is illusory. At a minimum, under the case law cited above, these allegations create a duty on the part of Defendant to defend Plaintiff.

Defendant repeatedly seeks to cast the underlying complaint as a "business dispute" between "competitors." This argument misstates the relationship between the Plaintiff and Acrisure under the Co-Broker Agreement. Plaintiff was not "competing" with Acrisure; Plaintiff was performing "Professional Services" for Acrisure, i.e., cooperating with Acrisure in placing bond and surety coverage for the benefit of their respective clients. Every action that Acrisure alleges Plaintiff undertook was undertaken solely in the course of Plaintiff's performance of the services that it agreed to perform for and with Acrisure. The complaint is *not* about a business dispute between competitors; it is about a collaborative effort between Acrisure and Plaintiff in which Acrisure alleged that Plaintiff benefited more than Acrisure did[1].

[1] Of note, professional liability coverage can even extend to "business disputes between competitors." *See, e.g. EYEEXAM of Cal., Inc. v. Allied World Surplus Lines Ins. Co.,* 2015 U.S. Dist. LEXIS 153388 (N.D. CAL 2015) (holding that a lawsuit alleging unfair competition against an insured was covered under a professional errors and omissions insurance policy)..

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Accordingly, the allegations contained within the Complaint established that the Acrisure Complaint was a covered Claim, and that Endurance is therefore obligated to defend H&H.

**3. Endurance's Rationale For Denial Of Coverage Is Not Supported**

The allegations of the Acrisure Complaint and the facts of which Endurance was aware (or reasonably should have been aware of) do not support Endurance's denial of coverage (as set forth in Ex. 4 to the Hoffner Declaration). Plaintiff contends that the authorities cited in Defendant's Opposition Brief do not support Defendant's denial:

*Bank of California v. Opie,* 663 F.2d. 977 (9th Cir. 1981) – this case (decided under Washington law) states that "[i]n determining whether a particular act is of a professional nature or a 'professional service' we must look not to the title or character of the party performing the act, but to the act itself" and that "to be considered a professional service, the conduct must arise out of the insured's performance of his specialized vocation or profession." In that case, the Court held that "the responsibility to manage the loan proceeds was clearly part of Opie's usual day-to-day business operation, and therefore was a 'professional service' within the meaning of the policy." *Id.* at 982. Similarly, all of the errors and omissions alleged against Plaintiff (soliciting and servicing clients, handling funds, and interacting with administrative personnel) were all part of Plaintiff's usual day-to-day operations, and therefore constituted "professional services."

*Blumberg v. Guarantee Ins. Co.* (1987) 192 Cal.App.3d 1286 – this case holds that a professional liability insurance policy does not cover an attorney's alleged misrepresentation to his partners. This case is inapposite because the complaint at issue does not allege that an H&H employee made misrepresentations to H&H. The relationship between Acrisure and H&H was an independent contractor relationship, under which Plaintiff provided professional services to clients and to Acrisure, not an employment relationship or a partnership.

*Lira v. Chicago Ins. Co.,* 1992 U.S. App. LEXIS 15474 (9th Cir. 1992)(unpub.) – this case, decided under Washington's professional malpractice liability law, addressed the "special risks inherent in the rehabilitation profession" (*Id.* at *9). It did not purport to address the nature and scope of professional services provided by insurance brokers. It did, however, note

California law for the proposition that "[t]he presence of some noncovered claims in Charter's complaint does not absolve Chicago of its duty to defend if Charter also alleges some covered claims" (*Id.* at *5, citing *California Union Ins. Co. v. Club Aquarius* (1980) 113 Cal.App.3d 243).

*State Farm Fire & Cas. Co. v. Wier* (2012) 2012 Cal.App.Unpub. LEXIS 7842 – this case involved an action by an insurance company against two of its former employees, alleging *inter alia* theft of trade secrets and breach of employment contracts. The Court stated that "[b]usiness disputes between members of a firm or between employers and employees are generally not covered under professional liability insurance." *Id.* at *25. This holding does not apply to this case because Acrisure bases its suit against Plaintiff on the Co-Broker Agreement, not on an employment contract. The Court also stated that "the causes of action against the agents . . . were not based on 'rendering or failing to render professional services' as insurance agents." *Id.*at *26. In this case, the claims against Plaintiff arise out of the professional services they provided to clients and to Acrisure under the Co-Broker Agreement.

*Dominguez v. Financial Indemnity Co.* (2010) 183 Cal.App.4th 388 – this case involved the liability limitation for permissive users in an automobile insurance policy. The case holds that insurance policies are to be interpreted "in context," giving effect to "every part of the policy with each clause helping to interpret the other." *Id.* at 395. The case also holds that "[t]he policy should be read as a layman would read it and not as it might be analyzed by an attorney or an insurance expert." *Id.* at 396. In other words, *Dominguez* does not allow an insurer to torture the meaning of a single word ("solely") in order to avoid the language of the insuring agreement as a whole, nor does it allow an insurer to avoid covered claims by asserting the presence of noncovered claims.

*Farmers Ins. Exch. v. Knopp* (1996) 50 Cal.App.4th 1415 – this case involved the interpretation of an exclusion (not an insuring agreement) in an automobile insurance policy and a determination as to whether the exclusion was ambiguous. The case holds that "contracts, including insurance contracts, are to be construed to avoid rendering terms surplusage . . ." *Id.* at 1421. The Court also noted that "[a]mbiguity in policy language is resolved by interpreting the ambiguous language in accordance with the objectively reasonable expectations of the insured."

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

*Id.* at 1422. This holding does not change the fact that the allegations of Acrisure's complaint arise out of the performance of professional services by Plaintiff, and therefore Defendant owes Plaintiff a defense. At a minimum, Plaintiff's expectation of coverage is objectively reasonable.

*Van Ness & Sperry, Inc. v. National Union Fire Ins. Co.,* 1992 U.S. App. LEXIS 30574 (9th Cir. 1992) (unpub.) – this case decided coverage on the narrow issue of whether "a single claim in the underlying action that 'defendants have also misrepresented to plaintiff's clients or potential clients that plaintiff does not cooperate with outside brokers'" triggered coverage under a professional liability policy. The Court held that no coverage was provided because the alleged remark was not made in the course of the insured's professional duties. Of note, the Court cited an earlier case holding that allegedly disparaging remarks made in the course of performing "professional services" *do* trigger coverage under professional liability policies. *Geddes v. Tri-State Ins. Co.* (1968) 264 Cal.App.2d 181.

*Bennett v. U.S. Liability Ins. Group,* 2014 U.S. Dist. LEXIS 57873 (D.Or.2014) – this case, decided under Oregon law, involved an allegation by the plaintiff that his ex-wife and business partner improperly billed clients through their business and mischaracterized her income. The Court held that the dispute involved billing, not the insured's performance of her professional services, and therefore the insured was not entitled to coverage. The Acrisure case does not involve allegations of improper billing, so this case is inapposite.

**4. The Exclusions Cited By Endurance Do Not Preclude Coverage**

Defendant also identified certain Policy exclusions that it contends exclude coverage based on the allegations of the Complaint. These exclusions, strictly construed against Defendant, do not support denial of the Claim.

The Opposition Brief cites to the Policy's Exclusion C, which states that the Policy does not apply to the failure to perform Professional Services by any entity other than Plaintiff. Defendant contends that this exclusion applies because "[t]he Claimant alleges that Ms. Huang was an officer and/or employee of the Claimant." This mis-reads the Complaint. Acrisure alleges that Huang's employment with Acrisure ended in 2016 (Complaint ¶ 19), when she co-founded Plaintiff, and that the allegedly wrongful acts all occurred after she was no longer an

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

Acrisure employee (Complaint ¶¶ 28-33). At the time of the alleged wrongful acts, Huang was a principal of Plaintiff, which (per the Agreement) was not an employee of Acrisure. Therefore, this exclusion does not apply.

The Opposition Brief also cites to the Policy's Exclusion K. This exclusion states that the Policy does not apply to any claim arising out or any actual or allege misappropriation of trade secrets, *except* that it does not apply to any alleged failure to place, maintain, or renew any insurance, or to any alleged failure to service a customer account. The underlying complaint in this case, while alleging misappropriation of trade secrets, *also* contains allegations of engaging Acrisure's employees, failing to properly distribute payments received, and unfairly competing with Acrisure for customers (as noted above). Exclusion K does not apply to any of these allegations. Moreover, by its own terms, Exclusion K does not apply to allegations of a failure to properly "service any account of a customer or client . . ." The Co-Broker Agreement stated that it would "cover the procurement, sale, ***servicing*** and ownership of insurance and/or surety bond coverages (a) on behalf of each person or entity during the term of this Agreement that Broker may in its discretion determine to refer to Acrisure for placement with or through Acrisure . . . and (b) on behalf of each person or entity during the term of this Agreement that Acrisure may in its discretion determine to refer to Broker for placement with or through Broker . . ." [emphasis added]. The contract that Acrisure alleges Plaintiff breached therefore involved allegations that Plaintiff failed to properly "service any account of a customer of client"; as such, Exclusion K does not apply.

The Opposition Brief also refers to Exclusion O. This provision excludes coverage for any claim arising out of false, deceptive or unfair business practices "if a final and non-appealable judgment or adjudication adverse to the Insured establishes such conduct." Since there has been no final or non-appealable judgment adverse to Plaintiff, this exclusion does not preclude coverage of the Claim.

The Opposition Brief also refers to Exclusion U. This provision excludes coverage for any claim seeking premiums, commissions, or brokerage fees. However, the Policy states that the exclusion "shall not apply to the failure of the Insured to remit premiums that the Insured has

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

collected." The complaint alleged that the parties agreed that Plaintiff "would service some of (Acrisure's) accounts, and share the profits. (Plaintiff) promised to hold funds received pursuant to such servicing of accounts and to divide the funds with Acrisure . . ." (Complaint ¶ 22); that Plaintiff "did not compensate [Acrisure] for this business by sharing profits . . ." (Complaint ¶ 30); and that Plaintiff "refus[ed] to compensate (Acrisure) for the revenues obtained . . ." (Complaint ¶ 36). By this language, Acrisure alleged that Plaintiff failed to remit to Acrisure premiums that H&H collected. As such, this exclusion does not apply.

### 5. California Law Does Not Preclude Coverage

#### A. Insurance Code Section 533

Defendant also argues that it has no duty to defend Plaintiff under California Insurance Code Section 533. This code section provides that "[a]n insurer is not liable for a loss caused by the willful act of the insured; but he is not exonerated by the negligence of the insured, or of the insured's agents or others." While this code section may, in the appropriate case, preclude *indemnification*, it does not relieve an insurer of its duty to *defend* a claim so long as the insured reasonably expects the policy to cover the types of acts involved in the underlying suit. *B&E Convalescent Center v. State Compensation Ins. Fund* (1992) 8 Cal.App.4th 78, 93 ("[p]ut another way, 'if the reasonable expectations of an insured are that a defense will be provided for a claim, then the insurer cannot escape that obligation merely because public policy precludes it from indemnifying that claim.' [Citation.]"). This legal principle dates back nearly 56 years. *See, e.g. Gray v. Zurich Ins. Co.* (1966) 65 Cal.2d 263, 277 (holding that Insurance Code section 533 did not relieve an insurer of its contractual duty to defend; "a contract to defend an assured upon mere accusation of a wilful tort does not encourage such wilful conduct.").

The cases that Defendant cites do not compel a different conclusion. For example, in *Downey Venture v. LMI Ins. Co.* (1998) 66 Cal.App.4th 478, the Court held that section 533 "does not apply to LMI's defense commitment which, in this policy, is a specific and distinct commitment. With respect to that part of LMI's promise, section 533 presents no barrier." *Id.* at 507. In *State Farm General Ins. Co. v. Mintarsih* (2009) 175 Cal.App.4th 274, the insurer

provided a defense to its insureds, and then filed a declaratory relief action in which the Court found that the insurer was not required to indemnify all of the claims alleged. In *Ulrich v. State Farm Fire & Casualty Ins. Co.* (2003) 109 Cal.App.4th 598, the insurer initially provided coverage (under a reservation of rights), and only later withdrew coverage after the insured pled guilty to conspiracy to pervert and obstruct justice. The insurer did not base its withdrawal of coverage upon the mere allegations of the complaint, as happened herein.

In this case, Plaintiff denies that it solicited Acrisure's customers and/or employees, and denies that it breached the Co-Broker Agreement (Hoffner Dec. ¶ 22). There is no extrinsic evidence that supports, or even suggests, that Plaintiff committed wrongful acts with the intent to cause harm to Acrisure. As such, this code section does not relieve Defendant of its contractual duty to defend Plaintiff.

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

B. <u>Breach of Contractual Obligation to Pay Debt</u>

Defendant cites case law holding that a party who is contractually obligated to pay a debt, and fails to do so, has not committed a "wrongful act" for purposes of insurance coverage. This case law has nothing to do with coverage of a lawsuit that alleges improper performance of professional services. *See, e.g. Caitlin Specialty Ins. Co. v. Camico Mutual Ins. Co.,* 896 F.Supp.2d 808, 815-16 (case law does not apply where insured is accused of improperly rendering professional services).

The cases that Defendant cites are inapposite. *August Entertainment, Inc. v. Philadelphia Indemnity Ins. Co.* (2007) 146 Cal.App.4th 565 involved Directors & Officers ("D&O") coverage, not professional liability coverage. As the Court noted, "D&O insurance is 'a specialized form of coverage for (i) claims against corporate directors and officers based on acts committed in their corporate capacities; [and] (ii) the corporation's indemnification obligations to its directors and officers for such claims'" which must be " reviewed in the context of the specific policy language at issue . . .'" (*Id.* at 573-74). The case did not seek to address coverage under a professional liability policy. Also, the case analyzed the duty to indemnify, not the duty to defend. *Id.* at 574 ("[a]lthough August Entertainment's pleadings and opening brief on appeal make passing reference to the duty to defend, the gist of its argument is that Philadelphia is liable under the

D&O insurance for August Entertainment's judgment against Maclean, that is, for indemnity. The question, therefore, is whether actual, not potential, coverage existed.").

In *Vandenberg v. Superior Court* (1999) 21 Cal.4th 815, the California Supreme Court specifically held (in analyzing a commercial general liability policy) that a policy providing coverage for sums that an insured became "legally obligated to pay as damages" did not preclude coverage for losses pled as contractual damages. *Id.* at 838-39. In so holding, the Court "reject[ed] the ex contractu/ex delicto distinction . . ." (*Id.*). Instead, the Court held that the reasonable expectations of the insured control:

> Nothing in the respective policies between Vandenberg and any of the insurers suggests any special or legalistic meaning to the phrase "legally obligated to pay as damages." A reasonable layperson would certainly understand "legally obligated to pay" to refer to any obligation which is binding and enforceable under the law, whether pursuant to contract or tort liability. Further, a reasonable layperson, cognizant that he or she is purchasing a "general liability" insurance policy, would not conclude such coverage term only refers to liability pled in tort, and thus entirely excludes liability pled on a theory of breach of contract. Under general insurance principles, we must interpret the phrase "legally obligated to pay as damages" in accordance with the ordinary and popular sense, not the legalistic, and erroneously premised, interpretation of the language urged by insurers.
>
> *Id.* at 840.

Accordingly, this line of cases does not absolve Defendant of its duty to defend.

C. Restitution/Disgorgement

The underlying Complaint contains no specific request for restitution or disgorgement of any particular amount. The Prayer for Relief includes a general prayer for restitution/disgorgement, along with claims for actual damages, punitive damages, injunctive relief, and attorney's fees. This general prayer does not relieve Defendant of its duty to defend.

**6. Defendant May Be Liable for "Bad Faith" Denial**

Plaintiff acknowledges that if the Court finds no potential for coverage under the Policy,





BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

then Defendant cannot be held liable for breach of the covenant of good faith and fair dealing in denying coverage. For the reasons set forth above, Plaintiff submits that there is coverage, or at least a potential for coverage, under the Policy. Defendant also argues that it cannot be held liable for "bad faith" if there is a "genuine dispute" as to coverage. This misstates the law. An insurer is obligated to act fairly and in good faith in discharging its contractual responsibilities. *California Shoppers, Inc. v. Royal Globe Ins. Co.* (1985) 175 Cal.App.3d 1, 54. The "reasonableness" of an insurer's claims handling conduct is ordinarily a question of fact; it only becomes a question of law where the evidence is undisputed and only one reasonable inference can be drawn from the evidence. *Paulfrey v. Blue Chip Stamps* (1983) 150 Cal.App.3d 187, 196. In order to avoid a finding that a denial was in "bad faith", an insurer must undertake a reasonable investigation into the circumstances of the claim before denying coverage. *Anthem Electronics, Inc. v. Pacific Employers Ins. Co.,* 302 F.3d 1049, 1054 (citing *American International Bank v. Fidelity and Deposit Co.* (1996) 49 Cal.App.4th 1558, 1571. The "genuine dispute" rule does not relieve an insurer from its obligation to thoroughly and fairly investigate, process and evaluate the insured's claim. *Wilson v. 21st Century Ins. Co.* (2007) 42 Cal.4th 713, 723. If an insured is later able to prove that a reasonable investigation would have uncovered evidence to establish coverage or a potential for coverage, the insurer may be held liable for "bad faith." *Id*. In this case, Defendant denied coverage less than a week after tender. Plaintiff is unaware of any investigation by Defendant before denying coverage (please see Supplemental Declaration of Eric Hoffner). As such, unless the Court finds that there is no potential for coverage, the existence of an alleged "genuine dispute" alone will not allow Defendant to escape liability for breaching the covenant of good faith and fair dealing by failing to conduct a reasonable investigation.

Defendant cites *Chateau Chamberay Homeowners' Association v. Associated International Ins. Co.* (2001) 90 Cal.App.4th 335, a first party case, in support of its argument that it is entitled to summary judgment on the second cause of action. As another Court in this District has noted, *Chateau Chamberay* "is inapposite, as it is a first-party property insurance case not involving an insurer's defense obligation." *Stem, Inc. v. Scottsdale Ins. Co.,* 2020 U.S. Dist. LEXIS 127486, *22-23 (N.D. CAL July 20, 2020). Accordingly, Plaintiff respectfully requests





BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA

that Defendant's motion for summary judgment as to the second cause of action be denied.

## CONCLUSION

Plaintiff's burden is to establish a *potential* for coverage, while Defendant must establish that there are *no circumstances* under which the allegations of the underlying complaint could ever result in coverage. Plaintiff has sustained its burden; Defendant has not.

WHEREFORE, Plaintiff respectfully requests that its Motion be granted, and that Defendant's motion be denied.

Dated: July 14, 2021

**BROTHERS SMITH LLP**

By: */s/ Horace W. Green*
Roger J. Brothers
Horace W. Green
Attorneys for Plaintiff
H&H INSURANCE SERVICES, INC.

BROTHERS SMITH LLP
ATTORNEYS AT LAW
WALNUT CREEK, CA