Michael F. Perlis (SBN: 095992)
mperlis@lockelord.com
Richard Johnson (SBN: 198117)
rrjohnson@lockelord.com
LOCKE LORD LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071
(213) 485-1500

Attorneys for Defendant
Endurance American Specialty Insurance Company

**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

| | |
|---|---|
| H&H Insurance Services, Inc.<br><br>Plaintiff,<br><br>vs.<br><br>Endurance American Specialty Insurance Company<br><br>Defendant. | Case No. 5:20-CV-07655-EJD<br><br>Hon. Edward J. Davila<br><br>**ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY REPLY IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT** |

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

## I. INTRODUCTION

Defendant Endurance American Specialty Insurance Company ("Endurance") respectfully submits this Reply in support of its Cross-Motion for Summary Judgment against Plaintiff, H&H Insurance Services, Inc. ("H&H," or "Plaintiff," or the "Insured"). As H&H concedes in its Opposition, there is no genuine dispute of material fact that would preclude summary judgment, and this Court may properly decide the Cross-Motion as a matter of law. The only dispute between the parties is a purely legal one, *viz.*: whether the insurance policy issued by Endurance to H&H (*i.e.*, Premiere Insurance Services Liability Insurance Policy Number APL10013787100 [the "Policy"]) provides any coverage for the underlying litigation captioned, *Acrisure of California, LLC v. H&H Insurance Services, Inc., et al.*, Santa Clara Super. Ct. Case No. 19CV352184 (the "Claim" or the "*Acrisure* Action").

As Endurance demonstrated in its Cross-Motion, the Policy does not provide any coverage for the Claim for at least three reasons: (1) the Claim does not trigger the Insuring Agreement because it does not allege Wrongful Acts solely in the provision of Professional Services; (2) the Claim is excluded by multiple express unambiguous Policy Exclusions (including one for Claims involving services performed for entities of which an Insured was an employee, and one for Claims arising out of the misappropriation of trade secrets); and, (3) the allegations of willful misconduct, and the prayer for punitive damages, restitution/disgorgement, and payments owed pursuant to contract, are uninsurable under California law. For all three of these reasons, there is no potential for coverage, no duty to defend, and no viable claim against Endurance for breach of contract or "bad faith."

As shown below, Plaintiff, in its Opposition: (1) fails to carry its burden of demonstrating any potential for coverage under the Policy's Insuring Agreement; (2) in so doing, completely ignores the Policy's express requirement that an act error or omission, to qualify as a Wrongful Act potentially covered by the Insuring Agreement,

must be committed "solely" in the performance of Professional Services; (3) fails to rebut Endurance's showing that Exclusions C and K preclude coverage for the Claim in its entirety; (4) in so doing, completely ignores the phases "based upon" and "arising out of," which California Courts construe broadly so as to exclude everything flowing from the excluded matter; (5) fails to rebut Endurance's showing that the Claim in its entirety is uninsurable pursuant to California Insurance Code section 533; (6) in so doing, contravenes the *Mintarsih* and *Uhrich* decisions, which hold that section 533 precludes coverage even for less than willful conduct that is inextricably intertwined with a scheme of willful misconduct, and that an insurer has no duty to defend a claim excluded by section 533 unless it expressly promised to cover the type of wrongdoing alleged (which Endurance did not); (7) therefore fails to demonstrate any potential whatsoever that the Claim could be covered by the Policy; and, (8) instead, merely relies (unavailingly) on the truism that the duty to defend is broader than the duty to indemnify (which, while generally accurate, is simply irrelevant here, since Endurance has demonstrated beyond any dispute that there is simply no coverage even potentially available for the Claim under the Policy).

Accordingly, the only purported bases for H&H's Opposition to Endurance's Cross-Motion are misstatements or misapplications of California law, which do not preclude summary judgment. Therefore, Endurance respectfully requests that this Court grant Endurance's Cross-Motion for Summary Judgment and enter Judgment for Endurance and against H&H dismissing this action in its entirety with prejudice.

## II. ARGUMENT

### A. Endurance Does Not Have Any Duty to Defend the *Acrisure* Action.

While Plaintiff, in its Opposition, accuses Endurance of failing to address the nature and scope of the duty to defend, Endurance did in fact address the duty to defend, and cited several cases, which Plaintiff did not discuss in its Opposition, which confirm that Endurance does not have any duty to defend the Claim if it demonstrates that there

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

is no potential for coverage—which is what it did in the Cross-Motion. *See*, *Gray v. Zurich Ins. Co.*, 65 Cal.2d 263, 276 (1966) ("The insurer need not defend if the third party complaint can by no conceivable theory raise a single issue which could bring it within the policy coverage"); *La Jolla Beach & Tennis Club, Inc. v. Industrial Indem. Co.*, 9 Cal.4th 27, 39 (1994) (same); *Alterra Excess & Surplus Ins. Co. v. Snyder*, 234 Cal.App.4th 1390, 1401-1402 (2015) (same); *National Auto. & Cas. Ins. Co. v. Stewart*, 223 Cal.App.3d 452, 463 (1990) (an insurer may refuse to defend where undisputed facts conclusively show liability would be excluded under the policy); *Wausau Underwriters Ins. Co. v. Unigard Security Ins. Co.*, 68 Cal.App.4th 1030, 1035 (same); *see also*, Policy Insuring Agreement I. B. (Defense) ("As part of and subject to the Limits of Liability, the Insurer shall have the right and duty to defend <u>any Claim against the Insured to which this Policy applies</u>, even if any of the allegations of the Claim are groundless, false, or fraudulent) (underscoring added).

In this case, as demonstrated in the Cross-Motion and discussed more fully below in subsections B, C, and D, the Policy does not apply to (and no indemnity coverage is even potentially available thereunder for) the Claim for several reasons. Taking all of these coverage issues into account, there is simply no portion whatsoever of the Claim that is even arguably potentially covered under the Policy. Therefore, Endurance has no duty to defend the Claim, and Endurance's Cross-Motion should be granted.

**B. <u>There Is No Coverage Available Under the Insuring Agreement</u>.**

The Policy's Insuring Agreement provides coverage (subject to the Policy's other terms and conditions and applicable law) for Claims for "Wrongful Acts," which are defined to mean actual or alleged act[s], error[s,] or omission[s] committed or attempted <u>solely</u> in the performance of or failure to perform Professional Services by an Insured.[1]

---

[1] Subsection II.X. of the Policy defines "Professional Services" to mean, in pertinent part: "services as an insurance agent, insurance broker, managing general agent, surplus lines broker, wholesale

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Here, the Insuring Agreement has not been triggered because the Claim does not involve a Wrongful Act solely in the performance of or failure to perform Professional Services to others.[2] Rather, the Claim centers around a business dispute and involves allegations that stem from the misappropriation of trade secrets and breach of a co-brokerage agreement. Thus, the Claim is not a Claim for acts, errors, or omissions committed or attempted solely in the performance or failure to perform Professional Services—nothing of the sort.

Even granting *arguendo* Plaintiff's contention that some of the Wrongful Acts were alleged to have occurred in the Insured's rendering or failure to render Professional Services to others (which they were not), Plaintiff still does not and cannot claim that all of the alleged injuries arose solely out of the Insureds' rendering or failure to render Professional Services, as defined under the Policy, to others. Plaintiff simply ignores the impact of the critical term, "solely," and fails to engage with (let alone distinguish) the cases holding that coverage is not available for business disputes tangentially related to Professional Services when the Policy requires that acts, errors, or omissions be committed "solely" in the performance of Professional Services. *See*, *e.g.*, *Van Ness & Sperry, Inc. v. National Union Fire Ins. Co. of Pittsburgh* (9th Cir. 1992) 979 F.2d 857 (no coverage where conduct was not "solely" for provision of defined professional

---

insurance broker, underwriting manager, managing general underwriter, program administrator, insurance consultant or notary public, including claims adjusting, claims administration, risk management, loss control consulting and arranging premium financing[.]"

[2] Subsection II.FF. of the Policy defines "Wrongful Act" to mean, in pertinent part: "any actual or alleged act, error or omission committed or attempted solely in the performance of or failure to perform Professional Services by an Insured or by any other person for whose acts the Named Insured is legally liable, including but not limited to: 1. Personal and Advertising Injury; 2. Breach of Privacy; 3. Breach of Security; or 4. Infringement of Intellectual Property Rights." (Underscoring added.)

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

services); *Bennett v. U.S. Liability Ins. Group* (D. Or., Apr. 25, 2014, No. 3:13-CV-01565-SI) 2014 WL 1660654, at *5 (billing actions were not "solely" in the provision of professional services, and therefore were not covered).

Moreover, while Plaintiff cites *EYEEXAM of Cal., Inc. v. Allied World Surplus Lines Ins. Co.*, 2015 U.S. Dist. LEXIS 153388 (N.D. CAL 2015), as a case purportedly holding that a lawsuit alleging unfair competition against an insured was covered under a professional errors and omissions insurance policy, a review of the decision discloses that the Policy at issue in that case did not contain an express requirement that acts, errors, or omissions be committed "solely" in the performance of (or failure to perform) Professional Services. Thus, Plaintiff's misplaced reliance on that case is merely another instance of failing to engage with the Policy's "solely" requirement, which is fatal to its claims for coverage.

Therefore, Plaintiff cannot even meet its preliminary burden of demonstrating that the allegations in the operative pleading fall within the terms of the Insuring Agreement. As the Insuring Agreement of the Policy has not been triggered, there is simply no coverage even potentially available to the Insureds for this Claim.

**C. <u>Certain Exclusions Would Also Preclude Coverage</u>.**

In addition, the Policy also contains certain express unambiguous exclusions that would also preclude coverage for the *Acrisure* Action, if any coverage were otherwise potentially available under the Insuring Agreement for *Acrisure* Claim (which it is not for the reasons stated above). The following Exclusions in the Policy are relevant based on the allegations in the Complaint:

III. EXCLUSIONS

As amended by Endorsement 4, this Policy shall not apply:

C. to any Claim <u>based upon, arising from, or in consequence of</u> the performance of or failure to perform Professional Services for or by any entity other than the Named Insured if on or after the date

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

> or time of the Wrongful Act giving rise to such Claim:
>
> . . . .
>
> 2. any Insured was a principal, partner, managing member, officer, director or employee of such entity.
>
> . . . .
>
> K. to any Claim <u>based upon or arising out of</u> any actual or alleged patent infringement or misappropriation of trade secrets. However, this exclusion shall not apply to any Claim brought against any Insured for any actual or alleged failure of an Insured to place, effect, maintain or renew any insurance or bond, in whole or in part, on any particular terms or with any particular limit or limits, or to comply with the terms of any insurance or bond or to service any account of a customer or client of the Named Insured in connection with any insurance or bond;

Given the use in Exclusions C and K of the introductory phrases, "based upon," and "arising out of," coverage is precluded for the *Acrisure* Action, in its entirety, and not solely for certain causes of action. Courts applying California law hold that the phrase, "arising out of," even when used in exclusions, must be construed broadly so as to exclude anything flowing from the excluded matter. *See*, *e.g.*, *Los Angeles Lakers v. Fed. Ins. Co.*, 869 F. 3d 795, 801 (9th Cir. 2017) (policy containing exclusion for claims "arising from, or in consequence of invasion of privacy" interpreted broadly because "California courts and our court have consistently given a broad interpretation to the clause 'arising from' in an insurance contract"); *Nestle USA, Inc. v. Travelers Cas. & Sur. Co. of Am.*, 10 Fed. Appx. 438, 440 (9th Cir. 2001); *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080 (9th Cir. 1985) (broadly interpreting "arising from" in insurance policy exclusion provision); *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F. 2d 659, 664 (9th Cir. 1960) (broadly interpreting "arising from"

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

in an insurance policy exclusion as "connot[ing] ... something broader than causation"); *Southgate Recreation & Park Dist. v. Cal. Ass'n for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) ("As this court has noted, the ' "arising out of" connective ... broadly links' the exclusionary operative events with the exclusion." (citations omitted)); *Trenches, Inc. v. Hanover Ins. Co.*, No. CV 12–627–AG, 2012 WL 12507967, at *7 (C.D. Cal. Aug. 10, 2012); *James River Insurance Company v. Medolac Laboratories*, 290 F. Supp. 3d 956, 967-970 (C. D. Cal. 2018); *Medill v. Westport Ins. Corp.*, 143 Cal. App. 4th 819, 836 (2006).

Plaintiff fails in its Opposition to engage with (let alone rebut) Endurance's demonstration in the Cross-Motion that Exclusions C and K preclude coverage for the Claim in its entirety, given the breadth of the phrases "based upon" and arising out of." Indeed, it simply ignores the vast body of case law broadly interpreting and applying "based upon" and "arising out of" Exclusions.

As Endurance demonstrated in the Cross-Motion, the Claim is excluded from coverage pursuant to Exclusion C, which precludes coverage for any claim involving the provision of services to another entity if at the time of some wrongful act giving rise to such claim, the Insured was an officer or employee of that other entity. If, as Plaintiff argues, the Claim could be characterized as alleging Wrongful Acts in the provision of Professional Services by H&H for Acrisure merely on the ground that H&H and the Claimant Acrisure were both parties to the Co-Brokerage Agreement, then the Claim would still excluded pursuant to Exclusion C because Ms. Huang was an officer or employee of Acrisure (an Entity to which the Insured was by hypothesis purportedly providing services) at the time of the first misappropriations alleged in the Acrisure Action. While Plaintiff argues that Ms. Huang was no longer an employee of Acrisure by the time of the Co-Brokerage Agreement alleged in the Complaint, that point is simply irrelevant. The Exclusion applies if the Insured was an officer or employee as of the time of any of the acts alleged, and the Acrisure Complaint alleges that Ms. Huang

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

commenced his misappropriation scheme while she was still employed by Acrisure. Thus, Endurance properly denied coverage for this additional reason as well.

As Endurance also demonstrated in the Cross-Motion, coverage is also precluded pursuant to Exclusion K because the *Acrisure* Action is based upon and arises out of alleged misappropriation of trade secrets. While Plaintiff argues that an exception of the exclusion purportedly applies (something on which Plaintiff, as the Insured, bears the burden), the Court can see for itself that the Acrisure Complaint simply does not allege any "failure of an Insured to place, effect, maintain or renew any insurance or bond, in whole or in part, on any particular terms or with any particular limit or limits, or to comply with the terms of any insurance or bond or to service any account of a customer or client of the Named Insured in connection with any insurance or bond[.]" Rather, it alleges misappropriation of trade secrets and breach of a co-brokerage agreement (which was allegedly entered into for the purpose of fraudulently misappropriating trade secrets), neither of which qualifies as a Claim for "failure of an Insured to place, effect, maintain or renew any insurance or bond, in whole or in part, on any particular terms or with any particular limit or limits, or to comply with the terms of any insurance or bond or to service any account of a customer or client of the Named Insured in connection with any insurance or bond[.]"

Accordingly, the Exclusion applies and, since California Courts read the exclusion's "arising out of" language very broadly to exclude any matter flowing from the excluded items, and everything alleged in the *Acrisure* Action flows from Ms. Huang's alleged misappropriation of trade secrets, Exclusion K would preclude coverage for the matter in its entirety, were any coverage otherwise potentially available under the Insuring Agreement (which it is not). As Endurance demonstrated in the Cross-Motion, there is no cause of action in the *Acrisure* Action that does not arise out of Ms. Huang's alleged misappropriation of trade secrets, which allegedly commenced before she founded H&H and continued to the filing of the lawsuit. Such alleged

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

misappropriation is the central alleged gravamen, and the but-for cause for Claimant's assertion, of: (1) the breach-of-contract cause of action (as the alleged misappropriation was the principal form of breach alleged and all alleged breaches flowed from the same (2) fraud (as the alleged misappropriation was Ms. Huang's alleged purpose in fraudulently inducing Acrisure to enter the co-broker agreement); (3) breach of fiduciary duty (as the alleged breaches of duty all arose from the alleged misappropriation); (4) misappropriation of trade secrets (same); (5) injunctive relief under the Defend Trade Secrets Act (same); (6) intentional interference with contractual relations (as the interference all arose from the alleged misappropriation of customer lists, business plans, employees, and other confidential information); (7) intentional interference with prospective economic advantage (as the interference all arose from the alleged misappropriation of customer lists, business plans, employees, and other confidential information); and, (8) violation of the California Business and Professions Code section 17200 (as the alleged fraudulent scheme to misappropriate trade secrets was the unfair business practice in question). Plaintiff simply fails to respond to, let alone rebut, this demonstration.

In addition, Acrisure's claim for the return of the $150,000 brokerage fee would be excluded pursuant to Exclusion U, were any coverage otherwise available (which it is not). Rather than address the clear applicability of this Exclusion, Plaintiff asserts incorrectly that the Claim purportedly falls within an exception to the Exclusion for claims of failure to remit premiums collected (an issue on which Plaintiff bears the burden). This Court can see for itself by reviewing the Complaint that that is simply not what is alleged in the Claim. The Claim alleges that Claimant paid a $150,000 brokerage fee to the Insured for services which the Insured ultimately did not perform (and allegedly never intended to perform because the co-brokerage agreement was a scam the Insured allegedly committed solely for the purpose of defrauding the Claimant, who has sued and prayed for a return of the $150,000 fee, not for the payment of

premiums collected but not remitted).[3]

Thus, on this issue as with the others, Plaintiff has failed to demonstrate any potential for coverage under the Policy. Indeed, as demonstrated above and in the Cross-Motion, it would be impossible for Plaintiff to do so, because the "solely" provision in the definition of Wrongful Act and the "based upon" and "arising out of" Exclusions completely and conclusively eliminate any potential for coverage whatsoever. Therefore, this Court should grant Endurance's Cross-Motion.

**D. <u>California Law Would Also Preclude Coverage</u>.**

Moreover, if any coverage were otherwise available under the Policy (which it is not), the *Acrisure* Action would also be uninsurable pursuant to California Insurance Code Section 533, which precludes coverage for willful misconduct and less than willful conduct that is inextricably intertwined in a scheme of willful misconduct. There is no way to read the pleadings in the Acrisure Action as alleging anything less than a willful and concerted scheme by Ms. Huang and H&H to defraud Acrisure. Finally, the Acrisure Action seeks to recover restitution/disgorgement and sums owed pursuant to contract, which are uninsurable under longstanding California public policy.

**1. California Insurance Code Section 533 Precludes Coverage.**

California Insurance Code section 533, which provides, in pertinent part, that an "insurer is not liable for a loss caused by the wilful act of the insured[,]" is an unwaivable statutory exclusion implied by law in every insurance policy issued in California. *See*, *e.g.*, *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 507 (1998).

The scheme of willful misconduct alleged in the *Acrisure* Action not only does not qualify as a Wrongful Act in the performance of Professional Services; it is also

---

[3] Likewise, since the Claim is also based upon and arises out of alleged unfair business practices, coverage would also precluded pursuant to Exclusion O(2), in the event of any adjudication, and Endurance appropriately reserved its rights accordingly.



Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

uninsurable as a matter of law pursuant to the above-cited Section 533, and therefore excluded from the Policy's definition of potentially covered "Damages."

Endurance has no obligation to indemnify or defend such claims. *See*, *e.g.*, *Downey Venture v. LMI Ins. Co.*, 66 Cal. App. 4th 478, 507 (1998) (inherently harmful willful acts, *e.g.*, malicious prosecution, are uninsurable); *State Farm Gen. Ins. Co. v. Mintarsih*, 175 Cal. App. 4th 274 (2009) (less than willful conduct that is inextricably intertwined with a scheme of willful misconduct is also uninsurable); *Uhrich v. State Farm Fire & Cas.*, 109 Cal. App. 4th 598, 614 (2003) (an insurer has no duty to defend matters excluded by section 533 unless it expressly promised to cover the specific type of misconduct alleged); *Coit Drapery Cleaners, Inc. v. Sequoia Ins. Co.*, 14 Cal. App. 4th 1595, 1603 (1993) (willful misconduct of principal imputed to company); *J.C. Penney Cas. Ins. Co. v. M.K.*, 52 Cal. 3d 1009 (1991) (adopting the "inherently harmful" standard and rejecting prior *Clemmer* decision's requirement of intent to harm).

If some portion of Ms. Huang's alleged scheme were notionally less than willful (and we do not see any such less-than-willful conduct alleged in [or even implied by] the express pleadings themselves), such conduct would nevertheless be precluded from coverage by Section 533 as explained in the *Mintarsih* decision cited above because it was inextricably intertwined with the alleged willful scheme.

Plaintiff does not distinguish *Mintarsih*, or explain how any potential for indemnity coverage even arguably exists in this case given the unmixed and unambiguous allegations of a willful misappropriation scheme, which is uninsurable under Section 533. While Plaintiff asserts that the insurer did not deny the Insured a defense in *Mintarsih* but only denied indemnity coverage, it simply fails to address the fact that there is no duty to defend, and Endurance may properly refuse a defense, under the rule set forth in *Uhrich*. Moreover, while Plaintiff attempts to distinguish *Uhrich* on the ground that the carrier did not cease defending the Insured until after the Insured had pled guilty to a crime, that attempt is unavailing because the rule in *Uhrich* does

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

not depend upon whether an Insured has pled guilty. *Uhrich* holds that an insurer does not have any duty to defend claims alleging only willful misconduct, and (try as it might to change the subject) Plaintiff cannot deny that the only allegations in the Claim are of willful conduct which is uninsurable under Section 533. Therefore, Section 533 provides yet another ground for concluding that no coverage is even potentially available for the Claim under the Policy.

**2. California Law Precludes Coverage for Contractual Debts.**

Moreover, coverage for monies owed pursuant to a contract is also precluded by California case law holding that claims for breach of contractual obligations to pay money do not seek "Loss" caused by a "Wrongful Act" as covered under error and omissions liability insurance policies. *See*, *e.g.*, *August Entertainment Inc. v. Philadelphia Indemnity Ins. Co.*, 146 Cal. App. 4th 565, 573-574 (2007) (failure to pay monies owed pursuant to a contract is not a covered Wrongful Act).

Plaintiff cites a different case, *Catlin Specialty Ins. Co. v. Camico Mutual Ins. Co.*, 896 F.Supp.2d 808, 815-16 (N.D. Cal. 2015), which Plaintiff asserts holds that the rule against breach-of-contract coverage announced *August* did not preclude coverage for a claim that an Insured failed to pay a litigation bond it was obligated by contract to pay. Plaintiff fails, however, to explain how that case has any applicability to the underlying action, in which the Insured is being sued for failing to return a $150,000 co-brokerage fee it obtained by fraud for purposes of misappropriating trade secrets. Thus, Plaintiff's reliance on *Catlin* is misplaced.

**3. California Law Precludes Coverage for Restitution/Disgorgement.**

As Endurance demonstrated, the Claim also seeks restitution/disgorgement of amounts the Insured is not legally permitted to retain, a form of recovery which (no matter how labelled) is uninsurable pursuant to longstanding California law. *See*, *e.g.*, *Bank of the West v. Superior Court*, 2 Cal. 4th 1254, 10 Cal. Rptr. 2d 538, 833 P. 2d 545, 553 (1992); *Pan Pacific Retail Properties, Inc. v. Gulf Ins. Co.*, 471 F. 3d 961,

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

966–69 (9th Cir. 2006); *Unified W. Grocers v. Twin City Fire Ins. Co.*, 457 F. 3d 1106, 1115 (9th Cir. 2006) ("The label of 'restitution' or 'damages' does not dictate whether a loss is insurable"), *citing*, *Level 3 Commc'ns., Inc. v. Fed. Ins. Co.*, 272 F. 3d 908, 911 (7th Cir. 2001) (holding disgorgement uninsurable even where labeled as "damages").

Plaintiff's only response to this point is to attempt (in contravention of the very case law cited) to circumvent the prohibition on coverage for disgorgement and restitution by relying on the labels the Claimant used in the underlying complaint and arguing that Claimant purportedly did not seek restitution or disgorgement because it did not use those labels in the Complaint. As the above-cited case law unanimously teaches, however, the labels do not matter. No matter what label the Claimant may have used, it is indisputable that the Claimant's claim for return of the $150,000 co-brokerage fees, and its claims for so-called "damages" for employees, opportunities, trade secrets, and profits the Insured allegedly misappropriated, in reality constitute uninsurable restitution/disgorgement.

**E. <u>Given the Lack of Coverage, Plaintiffs Have No Breach-of-Contract Claim</u>.**

Moreover, as Endurance demonstrated in its Cross-Motion, since Plaintiff cannot possibly demonstrate the nonpayment of any benefits due under the Policy, it cannot possibly prove a breach-of-contract claim, and Endurance is entitled to summary judgment in its favor on Plaintiff's cause of action for breach of contract.

**F. <u>Given the Absence of Coverage, Plaintiffs Have No Bad Faith Claim</u>.**

Likewise, for the same reason, Plaintiffs cannot prove any "bad faith" causes of action against Endurance, given the absence of any benefits due under the Excess Policy. While Plaintiff argues that Endurance has a duty to defend, it apparently agrees with Endurance that Endurance could not possibly be held liable for "bad faith" if it does not have any such duty to defend. As demonstrated in the Cross-Motion and confirmed above, however, Endurance does not have any duty to defend the Claim. Therefore, Plaintiff has no claim against it for "bad faith."

Locke Lord LLP
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

Finally, as noted in the alternative in the Cross-Motion, even in the event that this Court were to find some potential for coverage, Endurance would be entitled to summary adjudication in its favor on the "bad faith" claim, since this Court can confirm for itself that there was at least a reasonable dispute as to the availability of coverage.

## III. <u>CONCLUSION</u>

For the foregoing reasons, Endurance respectfully requests that this Court grant Endurance's Cross-Motion for Summary Judgment, and rule, as a matter of law, that: (1) the Policy does not provide any coverage for the *Acrisure* Action; (2) Plaintiff therefore has no claim against Endurance for breach of contract or "bad faith"; and, (3) Judgment should be entered against H&H and in favor of Endurance, dismissing this case, in its entirety, with prejudice.[4]

Dated: July 21, 2021

Respectfully submitted,

LOCKE LORD LLP

By: 

Michael F. Perlis
Richard Johnson
*Attorneys for Defendant Endurance American Specialty Insurance Company*

**Locke Lord LLP**
300 S. Grand Avenue, Suite 2600
Los Angeles, CA 90071

[4] In the alternative, if the Court finds any coverage to be available, Endurance moves for summary adjudication in its favor on the "bad faith" claims because there was at the very least a genuine and reasonable dispute as to the availability of coverage for the settlement.