UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| H&H INSURANCE SERVICES, INC., <br><br> Plaintiff, <br><br> v. <br><br> ENDURANCE AMERICAN SPECIALTY INSURANCE COMPANY, <br><br> Defendant. | Case No.   5:20-cv-07655-EJD <br><br> **ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT** <br><br> Re: Dkt. Nos. 21, 22 |

This case arises from an insurance coverage dispute between H&H Insurance Services, Inc., dba H&H Professional Insurance Associates ("Plaintiff"), a California corporation which provides insurance brokerage services, and Endurance American Specialty Insurance Company ("Defendant"). The parties dispute whether Defendant has a duty to defend Plaintiff in a state court action pursuant to a Professional Liability Insurance policy that Plaintiff purchased from Defendant. Currently pending before the Court are the parties' cross-motions for summary judgment. For the following reasons, Defendant's motion for summary judgment is **GRANTED**, and Plaintiff's motion for partial summary judgment is **DENIED**.[1]

I.   **BACKGROUND**

   A.   **The Endurance Policy**

Defendant issued an accountants professional liability insurance policy (the "Policy") to Plaintiff that provided coverage from September 26, 2018, to September 26, 2019. *See* Decl. of

---

[1] The Court took this motion under submission without oral argument pursuant to Civil Local Rule 7-1(b). *See* Dkt. No. 25.

Case No.:  5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

1

Eric Hoffner ("Hoffner Decl.") Dkt. No. 21-3 ¶ 13; *see also* Hoffner Decl., Ex. 2 at 23. Under the Policy, Defendant agreed to pay for:

> Damages and Claim Expenses on behalf of the Insured resulting from any Claim first made against the Insured and reported to the Insurer in writing during the Policy period, or any applicable Extended Reporting Period for any Wrongful Act committed on or after the Retroactive Date and before the Policy terminates.

Hoffner Decl. ¶ 15. The Policy defines "Claim" to mean "a demand received by the Insured for money or services and alleging a Wrongful Act, including:

> 1. the service of suit or any civil proceeding in a court of law or equity, including any appeal therefrom, which is commenced by the filing of a complaint, motion for judgment, or similar proceeding.

*Id.* ¶ 16. In turn, the Policy defined "Wrongful Act" to mean "any actual or alleged act, error or omission committed or attempted solely in the performance of or failure to perform Professional Services by an Insured or by any other person for whose acts the Named Insured is legally liable, including but not limited to:

> 1. Personal and Advertising Injury;
> 2. Breach of Privacy;
> 3. Breach of Security; or
> 4. Infringement of Intellectual Property Rights.

*Id.* ¶ 17. The term "Professional Services" is defined to encompass the "services as insurance agent, insurance broker, managing general agent, surplus lines broker, wholesale insurance broker . . . including claims adjusting, claims administration, risk management, loss control consulting and arranging premium financing" provided by the "[Plaintiff] to others." Hoffner Decl. ¶ 14. Finally, the Policy defined "Personal and Advertising Injury" to mean injury other than Bodily Injury arising out of one or more of the following offenses:

> 1. unfair competition, dilution, deceptive trade practices, false advertising or misrepresentation, wrongful publication, defamation, slander or libel, product or service disparagement, trade libel or other tort related to disparagement or harm to the reputation or character of any person or organization in the Media Communications or Advertisements of the Named Insured; or
>
> 2. misappropriation or misdirection of messages or media of third parties by the Insured,

Case No.: 5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

2

including metatags, Website domains and names, and related cyber content.

*See* Hoffner Decl. ¶ 28; Hoffner Decl., Ex. 2 at 48.

The Policy is also subject to several exclusions, including Exclusions C, K, O, and U.

Exclusion C states that the Policy shall not apply:

> to any Claim based upon, arising from, or in consequence of the performance of or failure to perform Professional Services for or by any entity other than the Named Insured if on or after the date or time of the Wrongful Act giving rise to such Claim:
>
> 1. any Insured owned or controlled 10% or more of the issued and outstanding shares, units or other portions of the capital of such entity; and/or
>
> 2. any Insured was a principal, partner, managing member, officer, director or employee of such entity.

Hoffner Decl., Ex. 4 at 96. Exclusion K states that the Policy shall not apply:

> to any Claim based upon or arising out of any actual or alleged patent infringement or misappropriation of trade secrets. However, this exclusion shall not apply to any Claim brought against any Insured for any actual or alleged failure of an Insured to place, effect, maintain or renew any insurance or bond, in whole or in part, on any particular terms or with any particular limit or limits, or to comply with the terms of any insurance or bond or to service any account of a customer or client of the Named Insured in connection with any insurance or bond.

*Id*. Exclusion O states that the Policy shall not apply:

> to any Claim for or arising out of or resulting from:
>
> 2. false, deceptive or unfair business practices, violation of consumer protection laws, or false or deceptive Advertisements, if a final and non-appealable judgment or adjudication adverse to the Insured establishes such conduct. However, this exclusion shall not apply to coverage otherwise provided by this Policy for Personal and Advertising Injury.

*Id*. Lastly, Exclusion U states that the Policy shall not apply:

> To any Claim for premiums, return premiums, commissions, brokerage fees or tax monies. However, this Exclusion shall not apply to the failure of the Insured to remit premiums that the Insured has collected.

*Id*.

Case No.: 5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

3

### B.  The *Acrisure* Lawsuit Against Plaintiff

In September 2019, a lawsuit was filed by Acrisure of California, LLC ("Acrisure") against Plaintiff and one of its founders and employees Jessica Huang ("Ms. Huang"). *See* Hoffner Decl. ¶ 19, Ex. 3 (*Acrisure of California, LLC v. H&H Insurance Services, Inc., et al.*, No. 19cv352184 (California Superior Ct. 2019)). Acrisure is a licensed insurance agency engaged in the business of selling insurance, professional employer organization, and other insurance services. Hoffner Decl., Ex. 3 ¶ 1. The complaint alleges that Ms. Huang was an officer and/or employee of Acrisure and had access to Acrisure's confidential information including customer lists. *Id*. ¶ 16. Ms Huang allegedly left her employment with Acrisure and formed H&H Insurance Services, Inc. with a partner. *Id*. ¶ 19.

Thereafter, Plaintiff and Acrisure entered into a mutual co-brokerage and contractor agreement whereby Plaintiff agreed to service some of Acrisure's accounts and share profits. *Id*. ¶ 22. Additionally, Plaintiff and Ms. Huang promised not to interfere with Acrisure's customer relationships, not to solicit any of its employees, and not to use any of Acrisure's confidential or proprietary information except as needed to fulfill their obligations under the co-brokerage agreement. Hoffner Decl., Ex. 1. Acrisure alleges however, that Plaintiff "divert[ed] [Acrisure's] customers' business and engag[ed] [Acrisure's] employees to perform services for [the insured]." Hoffner Decl., Ex. 3 ¶ 29. Additionally, Acrisure alleges Plaintiff "engaged the services of at least four of [Acrisure's] employees," "solicit[ed] [Acrisure's] employees . . . [did] business with [Acrisure's] customers and wrongfully compete[d] with [Acrisure] . . . and refuse[d] to compensate (Acrisure) for the revenues obtained as a result." *Id*. ¶¶ 33, 36. Plaintiff is also alleged to have "encouraged and solicited customers of [Acrisure] to place their insurance requests through [Plaintiff] rather than [Acrisure]." *Id*. ¶ 84.

The Acrisure Complaint alleged causes of action for (1) Breach of Contract; (2) Fraud; (3) Breach of Fiduciary Duty; (4) Misappropriation of Trade Secrets; Defend Trade Secrets Act; (5) Intentional Interference with Contractual Relations; (6) Interference with Prospective Economic Advantage; and (7) Violation of California Business & Professions Code § 17200. *Id*. ¶¶ 35-103.

Case No.:   5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
4

### C. Endurance Declines to Defend Plaintiff

After receiving notice of the *Acrisure* lawsuit, Plaintiff tendered its claim to Defendant. By letter, Defendant informed Plaintiff that based on Acrisure's allegations, the insuring agreement had not yet been triggered because "the Claim [did] not involve a Wrongful Act solely in the performance of or failure to perform Professional Services to other." Hoffner Decl., Ex. 4 at 3. Defendant also determined that even if the insuring agreement had been triggered, Exclusions C, K, O, and U were applicable. *Id*. at 3-4.

### D. Plaintiff Files this Action Against Endurance

Following Defendant's initial denial, counsel for each party exchanged several letters. Hoffner Decl. ¶ 25. But Defendant maintained its coverage denial which forced Plaintiff to retain counsel to defend itself at its own expense. *Id*. Plaintiff also filed this action against Defendant, asserting three claims for relief: (1) Breach of Contract; (2) Breach of the Implied Covenant of Good Faith and Fair Dealing; and (3) a claim for Declaratory Relief, seeking a declaration that Endurance has a duty to defend Plaintiff in the Acrisure Action, and to pay or reimburse all defense costs incurred therein. After Defendant filed its answer, the Court adopted the parties' case schedule which set a deadline for the parties to file dispositive motions. *See* Dkt. No. 13. Plaintiff then filed its motion for partial summary judgment as to its first claim for breach of contract. *See* Mot. for Partial Summary Judgment as to The Duty to Defend ("Mot. for Partial Summary Judgment"), Dkt. No. 21. In response, Defendant filed its own motion for summary judgment against Plaintiff as to all asserted claims. *See* Opp'n to Plaintiff's Mot. for Partial Summary Judgment; Cross Motion For Summary Judgment ("Endurance MSJ"), Dkt. No. 22. Plaintiff and Defendant then both filed a reply in support of their respective motions. *See* Plaintiff's Reply re Mot. for Partial Summary Judgment ("Plaintiff's Reply"), Dkt. No. 23; Endurance Reply re Cross-Motion for Summary Judgment ("Endurance Reply"), Dkt. No. 24.

## II. LEGAL STANDARD

A court shall grant summary judgment "if . . . there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The burden

Case No.: 5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
5

of establishing the absence of a genuine issue of material fact lies with the moving party, *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986), and the court must view the evidence in the light most favorable to the non-movant. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986) (citation omitted). A genuine factual issue exists if, considering the burdens of production and proof that would be required at trial, sufficient evidence favors the non-movant such that a reasonable jury could return a verdict in that party's favor. *Id*. at 248. The court may not weigh the evidence, assess the credibility of witnesses, or resolve issues of fact. *See id*. at 249.

To defeat summary judgment once the moving party has met its burden, the nonmoving party may not simply rely on the pleadings, but must produce significant probative evidence, by affidavit or as otherwise provided by Federal Rule of Civil Procedure 56, supporting the claim that a genuine issue of material fact exists. *TW Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir. 1987). In other words, there must exist more than "a scintilla of evidence" to support the non-moving party's claims, and conclusory assertions will not suffice. *See Anderson*, 477 U.S. at 252; *Thornhill Publ'g Co. v. GTE Corp.*, 594 F.2d 730, 738 (9th Cir. 1979). Similarly, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts" when ruling on the motion. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Where, as here, the parties have filed cross-motions for summary judgment, "[e]ach motion must be considered on its own merits." *Fair Hous. Council of Riverside Cty., Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). "In fulfilling its duty to review each cross-motion separately, the court must review the evidence submitted in support of each cross-motion." *Id*.

### III. DISCUSSION

All parties agree that California law applies to this coverage dispute and that the interpretation of an insurance policy is a matter of law. *See Smyth v. USAA Prop. & Cas. Ins. Co.*, 5 Cal. App. 4th 1470, 1474 (1992). The parties further agree that for the purposes of these cross motions, the material facts are the provisions in the Policy and the text of the complaint in

Case No.: 5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT

6

*Acrisure*, neither of which are in dispute. *See* Endurance MSJ at 3 n.3 (citing Hoffner Decl.). However, the parties dispute whether Endurance had a duty to defend Plaintiff. To resolve this question, the Court must decide if the allegations in the *Acrisure* action are "claims" against Plaintiff for "wrongful acts" in the rendering of "professional services" or if some Exclusion in the Policy prevents Defendant from defending Plaintiff in the *Acrisure* action.

"An insurer has a very broad duty to defend its insured under California law." *Anthem Elecs., Inc. v. Pac. Employers Ins. Co.*, 302 F.3d 1049, 1054 (9th Cir. 2002). The California Supreme Court has stated that "the insured is entitled to a defense if the underlying complaint alleges the insured's liability for damages potentially covered under the policy, or if the complaint might be amended to give rise to a liability that would be covered under the policy." *Montrose Chem. Corp. v. Super. Ct.*, 6 Cal. 4th 287, 299 (1993). Thus, to prevail in a declaratory relief action on the duty to defend, "the insured must prove the existence of a potential for coverage, while the insurer must establish the absence of any such potential." *Id.* Moreover, "the burden is on the insurer to prove a claim covered falls within an exclusion." *Aeroquip Corp. v. Aetna Casualty & Sur. Co.*, 26 F.3d 893, 895 (9th Cir. 1994) (internal quotation marks omitted).

Endurance argues that there was no coverage for the *Acrisure* action under the Policy because (1) the *Acrisure* action does not allege Wrongful Acts solely in the provision of Professional Services; (2) the Exclusions set forth in the Policy preclude coverage; and (3) even if coverage were available under the Policy, California law dictates that the *Acrisure* action is uninsurable. The Court finds Endurance's second argument persuasive.

Because Exclusions C and K use the introductory phases, "based upon" and "arising out of," the exclusions must be construed broadly to exclude any claim that falls within the exclusion or flows from the excluded matter. *See, e.g.*, *L.A. Lakers v. Fed. Ins. Co.*, 869 F.3d 795, 801 (9th Cir. 2017) ("California courts and our court have consistently given a broad interpretation to the clause 'arising from' in an insurance contract."); *Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080–81 (9th Cir. 1985) (broadly interpreting "arising from" in insurance policy exclusion provision); *Underwriters at Lloyd's of London v. Cordova Airlines, Inc.*, 283 F.2d 659,

Case No.: 5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
7

664 (9th Cir. 1960) ("The word 'arising' connotes, in ordinary usage, something broader than causation[.]" (citing *Red Ball Motor Freight, Inc. v. Emps. Mut. Liab. Ins. Co. of Wis.*, 189 F.2d 374, 378 (5th Cir. 1951) ("'Arising out of' are words of much broader significance than 'caused by.' They are ordinarily understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from,' . . . ."); *Southgate Recreation & Park Dist. v. Cal. Ass'n for Park & Recreation Ins.*, 106 Cal. App. 4th 293, 301 (2003) ("As this court has noted, the '"arising out of" connective . . . broadly links' the exclusionary operative events with the exclusion." (citation omitted)).

As alleged in the *Acrisure* action, Ms. Huang was an employee of Acrisure. Hoffner Decl. ¶ 19, Ex. 3 ¶ 10. Huang worked as an Account Executive and Chief Operating Officer at Suhr Risk Services of California Insurance Brokers ("Suhr"). *Id.* In February 2016, Acrisure acquired Suhr. *Id.* ¶ 12. Pursuant to this acquisition, Acrisure acquired the assets of Suhr and Huang became an employee of Acrisure. *Id.* As a condition of her employment, Huang was obligated to protect the confidentiality of Acrisure's trade secrets, proprietary information, and confidential company-related commercially sensitive information. *Id.* ¶¶ 12, 13, 17, 18; *see also id.* ¶ 14 (describing confidential information as information about "Plaintiff's operations, process, procedures, trade secrets, agent lists, adjuster lists" among other things). While employed by Suhr and Acrisure, Huang had access to Acrisure's confidential information including databases of customer lists, their needs, demands, purchasing preferences, renewal dates, negotiated rates, and other confidential information. *Id.* ¶ 16.

In 2016, Huang left her employment with Acrisure and formed her own insurance brokerage, H&H Insurance Services, Inc., d/b/a H&H Professional Insurance Associates ("PIA"). *Id.* ¶¶ 3, 19. PIA and Acrisure entered a contract whereby PIA agreed to service some of Acrisure's accounts. *Id.* ¶ 22. Huang promised not to use any of Acrisure's confidential information except as needed to fulfill PIA's obligations under the contract. *Id.* ¶ 26. However, Acrisure alleges that "[w]hile employed [at] [Acrisure], Huang utilized [Acrisure's] confidential information, including but not limited to its trade secrets, to divert [Acrisure's] customers'

Case No.: 5:20-cv-07655-EJD
ORDER RE CROSS MOTIONS FOR SUMMARY JUDGMENT
8

business to PIA." *Id.* ¶ 30.  Further, after Huang left Acrisure, she and PIA continued to divert Acrisure's business and employees.  *Id.* ¶ 31.  Acrisure's claims are based on Plaintiff's wrongful acquisition, disclosure, and use of Acrisure's confidential information, including but not limited to Acrisure's trade secrets, to divert Acrisure's clients and accounts to PIA.  *Id.* ¶ 33.  Acrisure's eight claims—breach of contract, fraud, breach of fiduciary duty, misappropriation of trade secrets, Defend Trade Secrets Act, intentional interference with contractual relations, intentional interference with prospective economic advantage, and violation of California Business & Professions Code § 17200—arise out of Huang's alleged misappropriation of Acrisure's confidential information.

Defendant properly denied coverage under Exclusions C and K.  Acrisure alleges that *while Huang was an employee* of Acrisure, she accessed and improperly used Acrisure's confidential information and continued to do so after founding PIA.  Exclusion C thus precludes coverage over the *Acrisure* action because it prevents Defendant from defending Plaintiff on any claim involving the provision of services to another entity (Acrisure) if the Insured (Plaintiff) was an officer or employee of that other entity (Acrisure) at the time that a wrongful act giving rise to the claim(s) occurred.  This is exactly what the *Acrisure* complaint alleges.  Further, because the *Acrisure* action is based upon and arises out of Plaintiff's alleged misappropriation of trade secrets, coverage is also precluded pursuant to Exclusion K.  Because this Court must read each exclusion's "arising out of" language broadly and because all claims flow from Huang's employment with Acrisure and involve the misappropriation of trade secrets, the Court concludes that Defendant has no duty to defend or indemnify Plaintiff in the *Acrisure* action.

Because Defendant has no duty to defend, Plaintiff's bad faith claim necessarily fails.  It is well settled that "there can be no breach of the implied covenant of good faith and fair dealing if no benefits are due under the policy."  *Brehm v. 21st Century Ins. Co.*, 166 Cal. App. 4th 1225, 1235 (2008) (quotation marks and citation omitted).  Because Defendant has no obligation under the Policy to pay any benefits to Plaintiff, Defendant is also entitled to summary judgment in its favor on Plaintiff's causes of action for breach of the implied covenant of good faith and fair

dealing.

## IV. CONCLUSION

For the foregoing reasons, the Court **GRANTS** Defendant's motion for summary judgment and **DENIES** and Plaintiff's motion for partial summary judgment. The Policy does not provide any coverage for the *Acrisure* action and Plaintiff therefore has no claim against Defendant for breach of contract or bad faith. A judgment will be entered against Plaintiff and in favor of Defendant dismissing this case with prejudice. The Clerk shall close the file.

**IT IS SO ORDERED.**

Dated: March 25, 2022

EDWARD J. DAVILA
United States District Judge